JULIUS W. LANDQUIST v. SWANTY SWANSON.

December 20, 1899.

Nos. 11,875—(146).

**Contract—Breach—Interpretation of Contract from Circumstances.**

The intent, meaning, and scope of a contract must be ascertained and determined from a. consideration of the condition and surroundings of the parties at the time it is made, the objects and purposes to be accomplished or attained, and such other facts as throw light on the subject. Within this rule. it is *held* that the failure and neglect of defendant, complained of by plaintiff as a breach of the contract set up in the complaint, were not within the scope or meaning of such contract, and consequently not a breach thereof.

Action in the district court for Hennepin county to recover $625,000 damages for breach of contract. From an order, Simpson, J., sustaining a demurrer to the complaint, plaintiff appealed. Affirmed.

*Jno. W. Arctander*, for appellant.

*Frank M. Nye*, for respondent.

BROWN, J.

This is an appeal from an order sustaining a demurrer to plaintiff's complaint. The action is one to recover the sum of $625,000, damages alleged to have been suffered by the plaintiff by reason of defendant's failure to perform the contract set up in the complaint.

Although the complaint is quite long, covering 115 folios, the main features of the cause of action may be sufficiently stated without reciting all that is stated therein. In 1896 one Scougale was the owner and holder of certain mining properties located in the state of Washington, and gave the plaintiff an option for the purchase thereof, the precise terms of which do not appear, unless they were the same as given plaintiff and defendant jointly, as will be presently stated. Plaintiff was without means, and wholly unable to comply with the terms of the option, and solicited defendant to join him, and furnish the money with which to carry the same through. Subsequent negotiations between the parties

resulted in a contract between them by which they undertook and agreed to jointly make the purchase of the mining properties, and to share equally in all profits arising from the subsequent operation of the mines. The complaint sets out the defendant's promises and agreements under this contract as follows:

"And in consideration of plaintiff then and there, by the terms of said agreement, allowing said defendant to come into said deal, and into said great prospective profits expected to be derived from the same, 'on the ground floor,' so to speak, the defendant then and there, and by the terms of said agreement, so then and there entered into, promised and agreed with said plaintiff that he, the said defendant, would well and truly pay from his own means and moneys all the moneys necessary to be paid or laid out for the purpose of procuring, securing, and carrying through the purchase of said mining properties, and also all moneys necessary to be paid out and laid out, or by said parties to said agreement deemed necessary to be paid out or laid out, or expended or advanced, for the purpose of securing and carrying through said deal, or for the further promotion of said mining enterprise, as well as for the purpose of securing the equipment of said mining property necessary for the most proper and profitable manner of operating the same as a hydraulic placer mine in the most economical and in the cheapest way, and in a way which would involve the least amount of loss or sacrifice on the part of said parties to said agreement, or any of them, as well as on the part of the corporation then and there intended and contemplated to be formed for the purpose of operating said mining property and placer mine; and, further, to pay and lay out all such moneys without any delay, and as soon as the same should be required and demanded for the purpose of carrying out said deal, and the mining enterprise and the mining operations thereby contemplated."

Thereafter plaintiff procured said Scougale to enter into a contract with plaintiff and defendant whereby said Scougale agreed to sell and convey the properties for the consideration of $50,000, and the agreement on the part of plaintiff and defendant for the organization of a corporation by the three parties for the purpose of operating the mines, and the delivery to him of 300,000 shares of the capital stock thereof. This contract is quite long, and all its provisions need not be stated. Pursuant thereto the corporation was organized, and the stock issued and delivered according to its terms, and Scougale executed and delivered to the corporation the deed of the properties. There is no allegation in the com-

plaint of a breach of the contract 'on the part of the defendant up to this time. So far as appears, he fully performed the same.

The particular breach complained of is found in the following facts: Under the laws of the United States with reference to mining claims, it is the duty of the holder thereof to do what is termed "assessment work" to the amount of $100 each year. A failure to comply with this requirement forfeits the claim, and subjects it to entry by any other person. This assessment work may be done by actual mining operations, or in the form of permanent improvements on the property. The complaint alleges: That it was the duty of Scougale to do such work, or cause it to be done. That defendant learned that such work could be done in the form of permanent improvements on the property, and that, in consideration of an agreement on the part of Scougale to so comply with the law and so do the work, he (defendant) promised and agreed to pay Scougale the cost thereof "out of his own pocket." Scougale went on under this arrangement, and made improvements on the property to the value of $800. Defendant paid $200 towards reimbursing him, but has refused to pay the balance. The complaint further alleges that this agreement to reimburse Scougale was made by defendant in behalf of himself and plaintiff, and that he (plaintiff) fully ratified the same.

This is the breach of contract for which plaintiff seeks to recover the very modest sum of $625,000; the contention on his part being that the defendant's agreement with Scougale to pay for the assessment work is covered and included in the contract with plaintiff, the terms of which we have set out in full, and that the failure to perform the Scougale contract was a failure to perform the contract with plaintiff as well.

The vital question in the case, as we view it, is whether this contention on plaintiff's part is sound. We think it is not, and for these reasons: In construing a contract, reference must be had to the condition and surroundings of the parties at the time it is made, the objects and purposes to be attained, and all circumstances throwing any light on the subject. In this case plaintiff had an option for the purchase of valuable mining properties, which, for want of funds, he was unable to carry out. His object

and sole purpose in joining defendant with him in the transaction were to obtain the necessary means to complete the purchase and set in motion actual mining operations. Defendant's promise and agreement to pay whatever was necessary to carry the transaction through is, as suggested by plaintiff's counsel, broad and comprehensive; but it cannot be construed to cover or include any liabilities other than such as fell upon the plaintiff, or upon plaintiff and defendant jointly, in carrying the transaction through. To construe it as including and covering the agreement to pay Scougale the cost of the assessment work, which was, so far as the complaint shows, wholly unknown to both plaintiff and defendant at the time of their contract, and which was the exclusive duty of Scougale to do and perform, would be to broaden the contract to an unwarranted extent, and to burden defendant with an obligation in no way in the contemplation of the parties at the time it was made. If defendant discharged every pecuniary obligation falling upon plaintiff, or upon plaintiff and defendant jointly, which arose in the course of and in securing and purchasing the mining properties, or for the purpose of promoting the mining enterprise, he fully performed his contract, and cannot be charged with liability to plaintiff for a failure to pay Scougale.

The complaint does not show that plaintiff was under any obligation to do the assessment work, or to pay any part thereof, or that he was under any duty or obligation whatever with respect thereto. He never paid any part of the claim to Scougale, nor can he be compelled to. The complaint alleges that it was Scougale's duty to do this work, and it does not appear to have been imposed upon plaintiff and defendant, or upon the corporation, by the contract by which Scougale transferred the mines to the corporation. Plaintiff has lost nothing, has been in no way injured or damaged, and cannot be heard to complain of Scougale's loss. We therefore hold that the complaint fails to state a cause of action, and the demurrer thereto was properly sustained.

It is unnecessary to refer to other questions argued by counsel, except to remark, in taking leave of the case, that the damages claimed by plaintiff, if it be conceded that the complaint shows a

breach of contract for which a recovery could be had, are too remote, and could not be recovered.

Order affirmed.